UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TEXTRON FINANCIAL CORP.          :
                                 :
            v.                   :   C.A. No. 09-061S
                                 :
TWO RIVERS, INC., TIMOTHY        :
COOKE, Alias TIMOTHY COOK        :
and LARRY COOKE, Alias LARRY     :
COOK                             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on Plaintiff Textron Financial Corporation's ("Plaintiff" or "TFC") Motion for Summary Judgment On Liability (Document No. 75) (the "Motion"). Plaintiff offensively moves for summary judgment, pursuant to Fed. R. Civ. P. 56, on its breach of contract claims against Defendants Two Rivers, Inc., and its owners and Guarantors, Mr. Timothy R. Cooke and Mr. Larry Cook, (collectively "Defendants" or "Two Rivers"). Additionally, Plaintiff defensively moves for Summary Judgment as to all of Defendants' Counterclaims. Defendants filed a timely Objection to Plaintiff's Motion. (Document No. 113).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on May 21, 2012. After reviewing the Motion and the Objection, in addition to performing independent research, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 75) be GRANTED.

**Statement of Facts**

The following material facts are undisputed. Since 1991, Two Rivers has been engaged in the business of selling, servicing and repairing farm products, including tractors, utility vehicles, lawn mowers, attachments and implements. (Document No. 76 ¶ 1, 2). Defendants Timothy Cooke and Larry Cook are co-equal owners of Two Rivers, Inc. (Id. ¶ 3).

On or about June 4, 2001 and December 8, 2004, TFC and Two Rivers entered into a Wholesale Security Agreement and a Finance Plan, and Timothy Cooke and Larry Cook executed Personal Guaranties of such Agreement in favor of TFC. (Id. ¶ 5). The Wholesale Security Agreement, Finance Plan and Guaranty signed on June 4, 2001 pertained to Farmtrac North America, LLC ("Farmtrac") inventory while the Wholesale Security Agreement, Finance Plan and Guaranty signed on December 8, 2004 pertained to inventory from Montana Tractors, Co. (Id. ¶ 6). Both Farmtrac and Montana manufactured farm tractors and related equipment.

Under the Wholesale Security Agreements and Finance Plans, TFC agreed to make advances and other financial accommodations (i.e., to loan money) to Two Rivers. (See, e.g., Document No. 75-10 at pp. 2-4). Pursuant to the Wholesale Security Agreements, Two Rivers granted TFC a security interest in "[a]ll equipment and inventory financed or refinanced by secured party [TFC] for debtor [Two Rivers], wherever located, in which Debtor now or hereafter has rights," as well as the proceeds from the sale of such inventory and equipment (collectively, the "Collateral"), to secure TFC's advances and other financial accommodations, both present and future, to Two Rivers. (See, e.g., Document No. 75-10 at p. 5, Exhibit A and at p. 2, ¶¶ 1-3).

The Wholesale Security Agreement provides that Two Rivers may sell any item of Collateral provided that (a) Two Rivers is not in default; (b) the price obtained for such item of Collateral is

not less than the unpaid Total Debt attributable thereto; and (c) Two Rivers holds all of the proceeds of any such sale in trust for, and promptly remits the unpaid Invoice Cost of such item of Collateral to TFC. (See, e.g., Document No. 75-10 at p. 2, ¶ 7). Two of the "Events of Default" listed in the Wholesale Security Agreements are (1) if obligations are "not paid or performed as required," and (2) if "sale or other disposition of the Collateral is made by Debtor other than in compliance with paragraph 7." (Id. at p. 3, ¶ 9(a), (c)).

The Wholesale Security Agreement also includes as part of its terms Two Rivers' promise to pay TFC the original invoice cost of each item of Collateral financed or refinanced by TFC plus interest and other charges, pursuant to the terms of the applicable Finance Plan and upon the sale of each item of such Collateral. (See, e.g., Document No. 75-10 at p. 2, ¶ 2). The Finance Plan's terms provide that each item of Collateral financed by TFC be described in a Statement of Financial Transaction ("SOFT"), which sets forth the terms of repayment and which TFC delivered to the customer. (See, e.g., Document No. 75-10 at p. 13). The Finance Plan unambiguously states, "**[u]nless Customer objects to the terms of a Financing Program, in writing, within ten (10) days following the date of the applicable SOFT, Customer shall be bound by such terms.**" (Id. emphasis in original)

By the terms of the documents the parties signed, Two Rivers is obligated to make the scheduled payments to TFC and, upon sale of the Collateral financed by TFC, must pay TFC the full remaining amount of the original invoice cost related to such Collateral. The Wholesale Security Agreement provides that "Debtor [Two Rivers] lawfully possesses and owns each item of Collateral financed or refinanced by Secured Party [TFC] for Debtor." (Id. at p. 2, ¶ 6). The Guaranties signed

by Timothy Cooke and Larry Cook unconditionally guarantee prompt payment and performance of all obligations owed to TFC. (See, e.g., Document No. 75-10 at p. 20).

Throughout the course of their relationship, TFC sent numerous SOFTs to Two Rivers. (Document No. 76, ¶ 14). The SOFT verification process was outlined in the applicable Finance Plan which was signed by Timothy Cooke on behalf of Two Rivers. (See, e.g., Document No. 75-10 at p. 13-14). Every month, Two Rivers received an inventory billing statement from TFC. (Document No. 76, ¶ 17). The inventory billing statements set forth (1) each item of Collateral as to which Two Rivers had not made payment to TFC; (2) the specific amount due and owing as to each item of Collateral (including principal, interest and fees); and (3) the total amount due and owing to TFC (as of the date of the inventory billing statement). (Id. ¶ 18).

The specific collateral that is the subject of the present breach of contract claim was financed or refinanced by TFC to Two Rivers. (Document Nos. 75-11 at pp. 20-25; and 75-12 at pp. 2-4). Two Rivers accepted and sold the disputed collateral, but did not make any payment to TFC in connection with the collateral. Additionally, Two Rivers made a buyback demand on the Farmtrac Receiver,[1] i.e., demanded that the Farmtrac Receiver buy-back Two Rivers' Farmtrac inventory. (Document No. 76 at p. 4, ¶ 20).

This is one of nine cases filed in this Court in 2009 by TFC against tractor dealers alleging that they, and their guarantors, if applicable, were in default of their payment obligations under these Wholesale Security Agreements. This is the only case that remains open out of the original nine. In this case, TFC filed a two-count Complaint against Two Rivers. Count I alleges that Two Rivers breached the Wholesale Security Agreement and Finance Plans by selling the subject collateral and

---

[1] Farmtrac ceased operations in 2008 and was placed into receivership.

failing to remit payment to TFC. (Document No. 1 at pp. 4-5). Count II alleges that Timothy Cooke and Larry Cook breached the terms of the individual Guaranties. (Id. at pp. 5-6). Defendants Answered the Complaint and filed a four-count Counterclaim that is also the subject of this Motion for Summary Judgment. Two Rivers' Counterclaims include its allegations that TFC breached the terms of the Agreements, that TFC and Farmtrac were engaged in a fraudulent conspiracy to dump inventory on Two Rivers, that TFC breached the covenant of good faith and fair dealing and that TFC is liable for slander of title. (Document No. 10 at pp. 18-24).

On July 5, 2010, TFC moved for a temporary restraining order and preliminary injunction enjoining Two Rivers' alienation of collateral without accounting for the proceeds. (Document No. 36). After hearing, I recommended that TFC's Motion be granted with respect to the proceeds of any collateral sold by Two Rivers in the future and denied with respect to previously-sold collateral. (Document No. 49). Over the objection of both parties, Judge Smith adopted my recommendation on February 7, 2011. (Document No. 66).

**Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

**Discussion**

As previously noted, TFC has moved for Summary Judgment both as to its claims for breach of contract and as to all of Two Rivers' counterclaims against it. (Document No. 75). The Court will first consider the parties' competing arguments concerning TFC's breach of contract claims against Two Rivers and the Guarantors.

A.  **TFC's Breach of Contract Claims**

In order to prevail on its breach of contract claims, Plaintiffs must prove the existence of a valid, enforceable contract, a breach of that contract and resulting damages. Petrarca v. Fidelity and Cas. Ins. Co, 884 A.2d 406, 410 (R.I. 2005). In the present case, the Wholesale Security Agreements, and the Guaranties are the operative documents. The terms of the Finance Plans are incorporated into each Wholesale Security Agreement. Plaintiff asserts that Two Rivers accepted and sold the disputed collateral but never made payment to TFC in breach of their agreements. At this stage, the Court is not tasked with assessing damages, but Plaintiff has sufficiently alleged that it suffered damages as a result of the alleged breach. Two Rivers presents a myriad of defenses and objections to the breach of contract claim. The defenses primarily focus on Two Rivers' contention that the specific written terms of the contract did not actually govern the parties' relationship.

One of Two Rivers' first defenses is that the specific collateral in dispute in this action was not "ordered" by Two Rivers, thus there was no financing agreement, since "[n]owhere in the Agreement did Two Rivers agree to pay TFC for equipment that Two Rivers did not order." (Document No. 113 at p. 14). To flesh out this argument, Two Rivers contends that some of the collateral at issue in this suit was sent to Two Rivers for storage and/or repair without Two Rivers' authorization. (Document No. 113 at pp. 3-5). Undercutting this argument is Two Rivers' concession that it received a SOFT for each item of collateral at issue. Thus, Two Rivers also argues that the principals at TFC "knew that the SOFTS did not reflect the actual terms because stored equipment was placed on Two Rivers' account for the sole purpose of keeping track of the location." (Id. at p. 5 (emphasis in original)). Two Rivers asserts that a monthly telephone discussion between Timothy Cooke and TFC account manager Bill Scott would establish which items of collateral Two Rivers was responsible for paying interest on, as well as the items for which Farmtrac bore the responsibility of paying interest. (Id.; see also Document No. 114 at pp. 4-5). Because the collateral in dispute was sent for storage or repair, Two Rivers contends that the Court should view Two Rivers' possession of the collateral created a "mere bailment[ ]." (Document No. 113 at pp. 15-19). Under a bailment, the bailee acquires no property interest and is only entitled to possession of the collateral at issue for a particular purpose. (Id. at p. 17). Two Rivers asserts that such purpose was "repair or storage" in this case. (Id.)

There are significant flaws in Two Rivers' arguments. First, while Two Rivers insists that it did not "order" the collateral at issue, it is undisputed that Two Rivers accepted delivery of the

collateral, received a SOFT for each item at issue, and never objected to the SOFTs in writing.[2] The SOFT procedure is in bold on the first page of the Finance Plans. Two Rivers signed the Wholesale Security Agreement and Finance Plan and even requested and obtained a specific change to the description of collateral in the Wholesale Security Agreement. (Document No. 75-10 at p. 5). Thus, it is difficult for Two Rivers to now argue that it did not pay attention to the detail in the financing documents and that such details are not binding. The Wholesale Security Agreement incorporates the Finance Plan, which includes the SOFT-objection procedure in bold. Two Rivers had knowledge of how to request a change in terms of the contracts and could have proposed a formal amendment to the "10-day" "in writing" requirements set forth in the Agreement but did not. In addition, there is absolutely no documentation supporting the existence of any alleged bailment with Farmtrac. The final blow to the "bailment" defense is that Two Rivers admits that it made a demand on the Farmtrac Receiver to "buyback" Farmtrac's equipment by making payment to TFC on Two Rivers' behalf. (Document No. 77-4 at p. 18). If Two Rivers had not obtained financing for the collateral at issue from TFC, there would have been no reason to demand that the Farmtrac Receiver make payment to TFC.[3] (Id.)

Two Rivers' second defense to the breach of contract claim is its argument that Two Rivers often discussed objections and exceptions to SOFTS with TFC in person or via phone, and therefore,

---

[2] Timothy Cooke also testified that he was "too busy" to notice the delivery of "unordered" equipment, and that incoming shipments were not checked. Cooke Trans. Ex. 1, 288:17-289:24, 272. I find this argument to be incredible and conclude that no reasonable factfinder would credit this explanation. Every business does, or should, reasonably reconcile its incoming shipments to make sure it received what it ordered and is billed accordingly. The collateral at issue here is not widgets, but farm tractors. Thus, the burden in checking the incoming shipment is not great, whereas the expense of a mistake is, even as to a single tractor. Thus, it is incredible that a tractor dealer would not do so.

[3] An even more common sense approach to handling the delivery of so-called "unordered" collateral would have been to exercise their rights under the UCC to reject the shipment.

it should not be held to the language in the Agreement which required that any objection be "in writing." (Document No. 113 at pp. 26-28). Two Rivers claims that the Court should not require "strict adherence" to the ten-day objection time period, but that a "combination of phone calls, face-to-face conversations and faxes give an adequate substitute" for the "written objections" called for in the Agreements. (Document No. 113 at p. 29). Two Rivers also claims that the ten-day period is "not vital to the contract, and that a breach thereof could not constitute a material breach." (Id. at p. 29). This argument falls short for two reasons. First, the parties to a contract cannot unilaterally pick and choose which contract terms to follow, and which can be ignored. The entire agreement, including the SOFT objection procedure, is clear, unambiguous and binding. (Document No. 117 at p. 11). Second, even though Two Rivers claims a formal written objection would have been futile, Two Rivers did not present any evidence that it ever formally objected, even once, and thus it has no factual basis for claiming futility. (Id. at p. 31.)

In addition to there being logical, common sense holes in the arguments set forth by Two Rivers, the case law in Rhode Island does not support the indulgences they ask the Court to take vis-a-vis contract terms. In Rhode Island, "[w]here the language of a contract is clear and unambiguous, the Rhode Island Supreme Court has generally interpreted the parties' intent based solely on the written words," and accords unambiguous words their "plain and natural meaning." Feinstein v. Brown, 432 F. Supp. 2d 258, 269 (D.R.I. 2006) (quoting In Re: Newport Plaza Assocs., 985 F.2d 640, 645 (1ˢᵗ Cir.1993)). If there are no ambiguities in a contract, summary judgment may be "an appropriate vehicle for resolving contract-interpretation disputes." Id. Under Rhode Island law, contract language is "ambiguous when and if it is 'reasonably susceptible of different constructions.'" Id. If this Court finds an ambiguity, then "the construction of that provision is a
-9-

question of fact." Id. (citing Fryzel v. Domestic Credit Corp., 120 R.I. 92, 385 A.2d 663, 666 (1978)). An ambiguity that creates a genuine issue of material fact, therefore, precludes summary judgment.

In the present case, the Wholesale Security Agreements, Finance Plans and Guaranties are clear and unambiguous documents. As outlined above, TFC agreed to make financial accommodations to Two Rivers in exchange for Two Rivers' promise to repay TFC in accord with the terms of the Wholesale Security Agreement and Finance Plans. Further, the Guaranties signed by Timothy Cooke and Larry Cook provide their personal guarantee to provide prompt payment and performance of Two Rivers' obligations to TFC. In summary, the parties signed an Agreement with an unambiguous requirement to object in writing regarding the contents of a SOFT. Two Rivers admits that it received collateral, SOFTs for the collateral, and that it sold the collateral, but Two Rivers argues that the parties' Agreements should be disregarded, or be given an alternate meaning. Further, it makes a baseless and unsupported argument that the tractors in question were abandoned by TFC, the Farmtrac Receiver and Montana and became its property "under the salvage laws in the State of Kentucky" to freely alienate. (Document No. 75-5 at pp. 17-18). The Court declines to disregard and/or rewrite the terms of the Wholesale Security Agreement, Finance Plans or Guaranties and recommends that Plaintiff's Motion for Summary Judgment as to its breach of contract claims be GRANTED.

### B. Two Rivers' Counterclaims

Two Rivers' four counterclaims include breach of contract by Plaintiff, fraudulent conspiracy between TFC and Farmtrac, breach of the covenant of good faith and fair dealing and slander of title. The counterclaims for breach of contract, breach of covenant of good faith and fair dealing and

slander of title all relate to the parties' agreements concerning the breach of contract issues which have been discussed above. Thus, the Court is recommending that summary judgment be entered against Defendants on those claims for the same reasons discussed above.

The counterclaim for fraudulent conspiracy warrants separate discussion. In this Counterclaim, Two Rivers asserts that TFC and Farmtrac engaged in a fraudulent conspiracy by pre-billing dealers and promising "no interest, never come due" terms for equipment that was placed on Two Rivers' lot for storage or repair purposes. (Document No. 10 at pp. 19-21; Document No. 113 at pp. 37-44). Two Rivers claims that this agreement between Two Rivers and Farmtrac was a promise by Farmtrac that Two Rivers had no obligation concerning certain equipment unless it was sold. (Document No. 113 at pp. 39-41). Two Rivers asserts that Farmtrac made "representations" and "promises" to dealers that "dealers would have no financial responsibility for equipment except to pay for equipment actually sold." (Id. at p. 42). Again, Two Rivers' allegations fall short, however, because they are unsupported by documentation and directly contradict the terms of the actual written contracts. At the outset, Two Rivers is unable to produce any competent evidence of any alleged agreement or arrangement between TFC and Farmtrac, or any legal basis to bind TFC assuming Farmtrac did enter into a "no interest, never come due" agreement with Two Rivers. Thus, the Court need not continue down this path. With no evidence to support its theory, the fraudulent conspiracy counterclaim fails as well.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 75) be GRANTED in full. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See

Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 30, 2012